**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    Plaintiff,<br><br>    v.<br><br>**CHRISTOPHER SOTO-GONZALEZ,**<br>    Defendant. | Criminal No. 16-798(CCC) |

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned attorneys and very respectfully states and prays that Defendant's motion to suppress be **DENIED**.

## INTRODUCTION

On December 21, 2016, a Grand Jury indicted Christopher Soto-González (hereafter, "Defendant") for possession of a firearm in furtherance of a drug trafficking crime and possession with intent to distribute controlled substances, all in violation of 18 U.S.C. §924 (c) and 21 U.S.C. § 841.

On February 13, 2017, Defendant filed a motion to suppress a loaded Smith & Wesson pistol bearing serial number DUP-6164 with an extended silver magazine, black magazine, a bag

containing marihuana and sixty-one (61) baggies of marihuana that the Puerto Rico Police Department (hereafter, "PRPD") agents seized on the date of his arrest.

Defendant's request is based on his claim that the PRPD agents did not observe Defendant in possession a firearm.

The Motion is meritless since the Government's version of facts is corroborated by the Defendant's recorded admissions.

## FACTUAL BACKGROUND

On December 15, 3016, at approximately 5:40 p.m., PRPD agents assigned to the North Bayamón Precinct were patrolling on a marked unit. Their shift was supposed to end at 7:00 pm. The agents observed a Mitsubishi Lancer license HRB-211, running thru a red light, at the intersection of 44th Street, withPR-29 in Bayamón, Puerto Rico. The agents ordered the driver to stop the car and scroll down the windows, through the loudspeakers. For security reasons, one of the agents stood next to the driver's door and the other next to the back passenger's door. The agents asked the driver, later identified as Christian Soto-González, for the license and vehicle registration. The Defendant reached into a black bag that was located behind the passenger's seat, to retrieve the driver's license. When he grabbed the bag, the agent, which was standing next to the back door on the passenger's side, observed a silver magazine in bag. Defendant, that was acting nervous, started to look for the driver's license in the bag. While Defendant turned over the driver's license, one of the agents asked him if he possessed a firearm license, which he answered in the negative. The agent, who had seen the silver magazine, asked Defendant to hand over the

U.S. vs. Christopher Soto-González
Criminal No. 16-798 (CCC)

bag. Inside, the agents seized: a black Smith & Wesson pistol bearing serial number DUP-6164, loaded with an extended silver magazine and six thousand dollars ($6000.00). The PRPD agents placed Defendant under arrest, read his Miranda rights, and seized from his person three hundred and ten dollars ($310.00).

The agents took the Defendant and the vehicle to the North Bayamón Precinct. The agents conducted an inventory of the vehicle and seized sixty-one (61) baggies and a bigger bag of marihuana, an electronic scale, an additional black magazine and cell phones.

Later on that day, Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF) arrived to the precinct. They explained to Defendant his constitutional rights against self-incrimination in the Spanish language. Defendant stated he understood his rights, waived them by signing a Waiver of Rights form and agreed to speak to the ATF agents without the presence of legal counselor. The agents recorded the interview. The Defendant admitted that he ran thru a red light because he felt dizzy and got distracted with the cell phone. That when he went too looked for the bag, to retrieved the driver's license, the firearm was there; that he "gave the bag voluntarily to the agents"; that when he picked up the bag, "that's were all happened". <u>ATF agents asked Defendant if he understood that the PRPD agent saw what it was a pistol and he: "yes, an illegal firearm."</u> Defendant further stated that he had purchased the firearm on the streets for a thousand

dollars ($1000) and that he bought the marihuana with the intension to distributed on the streets for five dollars ($5) each.

## LEGAL ANALYSIS

Defendant is now requesting the suppression of all the physical evidence seized during his arrest. In addition, defendant requested the suppression of the statements he made to the PRPD and the ones made to the ATF agents after waving his constitutional rights on December 15, 2016. Defendant's request is meritless.

    A. <u>Lawful Arrest and Search</u>

Contrary to Defendant's claim in his motion to suppress, this case is about a lawful arrest after PRPD agents observed illegal evidence, which gave them probable cause to arrest the Defendant. The facts clearly demonstrate the property seized was the result of a lawful arrest.

The Fourth Amendment to the Constitution provides people the right to be secure against unreasonable government intervention in their person, effects, and home. The Constitutional requirement of obtaining a warrant from an impartial magistrate, before a search and seizure can legally occur, is one of the fundamental tools instilled in our system of checks and balances to protect personal freedoms and rights. However, exceptions to this general rule exist. *Terry v. Ohio,* 392 U.S 1, 30 (1968). For example, a warrantless arrest does not contravene the Fourth Amendment's prohibition on unreasonable seizures so long as the arrest is supported by probable cause. *United States v. McFarlane*, 491 F.3d 53, 56 (1st Cir. 2007). Another exception, **the plain view doctrine**, permits the warrantless seizure of an item if an officer is lawfully present in a

position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself. *United States v. Gamache*, 792 F 3d 194, 199 (1st Cir. 2015). The police may "stop and briefly detain an individual for investigative purposes if the police have a reasonable suspicion that criminal activity is afoot." *Dapolitano*, 713 F3d at 147 (citing *Terry*, 392 U.S. at 30).

The inquiry into probable cause focuses on what the officer knew at the time of the arrest, *United States v. Brown*, 169 F.3d 89, 91 (1st Cir. 1999), and should evaluate the totality of the circumstances. *United States v. Reyes*, 225 F.3d 71, 75 (1st Cir. 2000). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Meade, 110 F.3d at 198 n. 11; *United States v. Vongkaysone*, 434 F.3d 68, 73 (1st Cir. 2006). Once the officer has probable cause, the arrest is lawful. *Holder v. Town of Sandown,* 585 F.3d 500, 504 (1st Cir. 2009) (*citing Tennessee v. Garner,* 471 U.S. 1, 7 (1985). "A police officer has probable cause when, at the time of the arrest, the facts and circumstances within the officer's knowledge… are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Holder,* 583 F.3d at 504. Id. (*quoting Michigan v. DeFillippo*, 443 U.S. 37, 37 (1979)). Probable cause requires only probability, not a certainty, of criminal activity. *Holder,* 585 F.3d at 504 (*citing Hill v. California*, 401 U.S. 797, 804 (1971)).

The United States submits that the arrest was legal inasmuch as the agents' observations provided him with probable cause to believe the defendant was in illegal possession of a weapon

in plain view. To establish probable cause, the government "need not present the quantum of proof necessary to convict." *United States v. Uricoechea-Casallas*, 946 F.2d 162, 165 (1st Cir.1991); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997).

In this case, the facts support the application of the plain view exception:

The basis for the defendant's initial detention was a violation to the Puerto Rico Vehicle and Traffic Law. The defendant has not contested the validity of the traffic stop for passing thru a red light. Nor does he claim that PRPD officers did not observe such violation. On the contrary, the defendant admits that the traffic violation happed because he was dizzy and got distracted with the cell phone. This means that because of the legal traffic stop, the agents lawfully reached the position from which they could see the item in plain view.

Once the agents approached the car, they asked for the driver's license and registration. For security reasons, one of the agents stood next to the driver's door and the other next to the back passenger's door. The Defendant reached a bag that was located on the backside of the passenger's seat to look for the driver's license. The agent that was near the back passenger's door saw a silver magazine in the bag that Defendant was reaching for. Because of his observation, the agent asked Defendant if he had a license to carry weapons, which he responded in the negative.[1]

---

1 See Puerto Rico Laws Ann. Title 25 § 458c (2013), it is a felony to possess a firearm in the Commonwealth of Puerto Rico without a License.

**The question that the agents asked the Defendant, during the traffic stop, did not violated the Fifth Amendment.** In *Berkemer v. McCarty,* 468 U.S. 420, 441 (1984), after an officer stopped the defendant's car, administered a sobriety test, and asked whether the defendant had used intoxicants, the defendant responded that he had. *Id* at 423. The Court found these statements admissible because the officer's actions would not cause a reasonable person to believe that he was in custody. *Id* at 429, 442. Furthermore, the First Circuit has explained that: "traffic stops are more analogous to a *Terry* stop than to a formal arrest and, therefore, are not custodial for purposes of *Miranda*" *United States v. Trueber*, 238 F.3d 79 (1st Cir. 2001).

In this case, upon concluding that a violation to Puerto Rico's weapons law had occurred, the probable cause standard was satisfied and the seizing agent had a lawful right of access to the object itself. As a result, the agent asked the Defendant to hand over the bag containing the magazine. The Defendant gave the bag to the agents and the illegal evidence was seized.

    B. *Inventory Search*

After the arrest of the Defendant, the agents took him to the police station. The agents brought the car into the police precinct for further investigation. The PRPD agents conducted an inventory search (PPR-128), and found sixty-one (61) baggies and a bigger bag of marihuana, an electronic scale, an additional black magazine and cell phones.

Puerto Rico Law 119, which was enacted on July 12, 2011, "establishes the rules that govern all asset forfeiture procedures in Puerto Rico". *See Universal Ins. Co. v. Dep't of Justice*, 866 F. Supp. 2d 49, 55 (D.P.R. 2012). When property "is used in connection with" certain

violations of the Puerto Rico Penal Code, P.R. Laws Ann. tit. 34, § 1723(a) ("Article 9"), it may be seized by the police without "a prior court order" if the seizure is conducted "while an arrest is made," *id.* § 1723a ("Article 10"), and an inventory search of that property is mandatory. *Id.* § 1723c ("Article 11")

The Supreme Court also has determined that inventory searches are an exception to the warrant requirement of the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976); *Florida v. Wells*, 495 U.S. 1, 5 (1990). "When vehicles are impounded, police routinely follow caretaking procedures by securing and inventorying the cars' contents. These procedures have been widely sustained as reasonable under the Fourth Amendment." *Opperman,* 428 U.S. at. 364. The Court analyzed that: "When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody the protection the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger…" *Opperman*, 428 U.S. at 369. (Internal citations omitted).

The agents arrested Defendant for possession of a firearm and ammunition without a license. The PRPD took possession of the vehicle and transported it to the precinct for an inventory search. This type of search is considered "reasonable" under the Fourth Amendment, regardless of whether there is probable cause or the police have a warrant, because it was developed for independent reasons, such as the safety of the officers, and the protection of an

owner's property while in the custody of the police. *See United States v. St. Pierre*, 488 F.3d 76, 79-80 (1st Cir.2007). Hence, the legal means by which the rest of the illegal evidence was found was truly independent. Furthermore, the use of the inventory search policy in the PRPD and the discovery of the mentioned items by such means would have been inevitable, since after the Defendant's arrest, the car had to be brought to the PRPD station to protect it. *See*, e.g., *United States v. Pardue*, 385 F.3d 101, 107 (1st Cir. 2004) (holding that the seizure of ammunition of an arrestee's backpack was lawful because the discovery of the same was inevitable pursuant to police's standard search and inventory procedure for personal belongings).

    C. *Confession to ATF Agents*

For the reasons set forth above, the arrest of Defendant did not result from any illegal act on part of the PRPD agents. Thus, any statements that Defendant made to law enforcement cannot possibly constitute fruits of a Fourth Amendment violation. "Evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause *United States v. Segura*, 468 U.S. 796, 815 (1984). The Defendant has not raised any Fifth Amendment challenge to the admissibility of the statements made to the ATF agents. Nonetheless, the Government notes that any statements that the Defendant made to law enforcement were voluntary and in strict compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966).

Miranda established a rule of constitutional dimension as to the warnings that must be given before a suspect's custodial statements might be admitted into evidence. *Dickerson v. United*

*States*, 530 U.S. 428, 439–40 (2000). If it is undisputed that the police administered the Miranda warnings, the next question is whether the defendant waived his Miranda rights.

Determining the validity of a Miranda waiver usually entails two separate inquiries. The waiver must be both voluntary, and knowing and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is voluntary when "it [is] the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. A waiver is knowing and intelligent when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. In essence, the Miranda rule and its requirements are met if a suspect receives adequate Miranda warnings, understands them, and has an opportunity to invoke the rights before giving any answers or admissions. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2263-64 (2010).

Here, it is uncontested that Miranda warnings were provided. Defendant understood the Miranda warnings and knowingly and intelligently waived them by signing waiver forms. In fact, in the unsworn declaration submitted by the defendant, he admits that the agents: "read my rights and I agreed to talk to them about the events that transpired." Thereafter, Defendant confessed and by doing so, he corroborated the version of the PRPD agents. **The Defendant admitted to the ATF agents that he understood that the PRPD agents saw an illegal firearm and that he voluntarily gave the bag, containing the firearm, to the agents.**

D. *Conclusion*

Consequently, the seizure of the items seized and statements made in this case should not be subject to the exclusionary rule of the Fourth Amendment: First, the traffic stop was valid. Second, the plain view exception to the warrant requirement of the Fourth Amendment apply.

Third, the Defendant statements during the traffic stop are admissible. Finally, the Defendant's admissions during the interview corroborates the facts and voluntariness with which he surrendered the illegal evidence. The motion suppress should be DENIED.

WHEREFORE, the United States respectfully requests that the Court **DENY** Defendant's motion to suppress.

### CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 14th day of March 2017.

**ROSA EMILIA RODRIGUEZ VELEZ**
United States Attorney

*S/Camille García Jiménez*
Camille García Jiménez
Special Assistant U.S. Attorney
Torre Chardon, Suite 1201
350 Carlos Chardon St.
San Juan, P.R. 00918
Tel. (787) 766-5656
e-mail: camille.garcia@usdoj.gov